## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MICHAEL LEON BRIDENSTINE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-16-498-R** |
| | ) | |
| **JIM FARRIS, Warden,**[1] | ) | |
| **Jess Dunn Correctional Center,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Michael Leon Bridenstine, an Oklahoma prisoner appearing pro se, has petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2254. *See* Pet. (Doc. No. 1) at 1-33.[2] United States District Judge David L. Russell has referred Petitioner's case to the undersigned Magistrate Judge for initial proceedings in accordance with 28 U.S.C. § 636. The undersigned has examined the Petition and recommends that it be dismissed under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 R.").

---

[1] Warden Jim Farris is substituted for Arthur Lightle as Respondent in this proceeding. *See* Fed. R. Civ. P. 25(d), 81(a)(4); Okla. Dep't of Corr., *Jess Dunn Correctional Center*, https://www.ok.gov/doc/Organization/Field_Operations/Region_I/Jess_Dunn_Correction al_Center.html (last visited Sept. 13, 2017).

[2] References to filings in this Court use the page numbers assigned by CM/ECF. When quoting from Petitioner's pro se filings, the undersigned has occasionally corrected capitalization, punctuation, and unambiguous abbreviations and spelling errors to improve readability.

BACKGROUND

On December 13, 2011, Petitioner pled guilty to one count of aggravated possession of child pornography (Count 1), in violation of Okla. Stat. tit. 21, § 1040.12a(A); and one count of knowingly downloading child pornography (Count 2), in violation of Okla. Stat. tit. 21, § 1021(A)(3). Pet. at 1; *see also State v. Bridenstine*, No. CF-2011-208 (Texas Cty. Dist. Ct.) (docket entry of Dec. 13, 2011).[3] Petitioner was sentenced to fifteen years' incarceration on Count 1, with five years suspended, and ten years' incarceration on Count 2, to run concurrently with the term of imprisonment on Count 1. *See* Pet. at 1.

As outlined below, Petitioner's arguments relate to application of an Oklahoma statute requiring that a person convicted of certain crimes serve 85% of the imposed sentence before he or she will be eligible for parole (the "85% Law"). Specifically, Oklahoma's 85% Law provides that a "person committing a felony offense listed in" title 21, section 13.1 of the Oklahoma Statutes, "on or after March 1, 2000, and convicted of the offense," "shall not be eligible for parole consideration prior to serving eighty-five percent (85%) of the sentence imposed." Okla. Stat. tit. 21, § 12.1.

Neither of the felony child-pornography offenses for which Petitioner was convicted in the underlying state prosecution (Case No. CF-2011-208) was listed in section 13.1 when Petitioner committed those offenses between January 1, 2007, and September 30, 2011. *See* Pet. at 4-5, 12-13, 16, 22-24, 29, 32-33 (citing Pet'r's OCCA Br. at 9, *Bridenstine v.*

---

[3] The undersigned takes judicial notice of the proceedings and filings in Petitioner's underlying state-court proceedings, which are publicly available through http://www.oscn.net and otherwise. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007).

*State*, No. PC-2015-1131, (Okla. Crim. App. Dec. 30, 2015)). At the time of his guilty plea, Petitioner completed a "Plea of Guilty/Summary of Facts" form, which was filed in the trial court on December 13, 2011, and stated that his offense of conviction was designated "an 85% crime." Pet. at 13; *see* Plea of Guilty/Summary of Facts at 2, *State v. Bridenstine*, No. CF-2011-208 (Texas Cty. Dist. Ct. Dec. 13, 2011). On this form, Petitioner checked as applicable, circled "Yes," and initialed Question Number 14, which asked:

> Do you understand that upon a conviction on a plea of guilty to the offenses
> you will be required to serve a minimum sentence of:
>> 85% of the sentence of imprisonment imposed before being eligible for
>> parole consideration and are not eligible for earned or other type of credits
>> which will have the effect of reducing the length of sentence to less than
>> 85% of the sentence imposed?

Plea of Guilty/Summary of Facts at 2, *State v. Bridenstine*, No. CF-2011-208 (Texas Cty. Dist. Ct. Dec. 13, 2011).

Following entry of his guilty pleas on December 13, 2011, Petitioner did not move in state court to withdraw those pleas or otherwise attempt to appeal his convictions. Pet. at 2, 4, 8, 12.

In May 2015, the Oklahoma Governor approved House Bill 1047, which added crimes of "child pornography" and "aggravated child pornography"—including aggravated possession of child pornography under title 21, section 1040.12 of the Oklahoma Statutes, of which Petitioner had been convicted in Case No. CF-2011-208—to the list of offenses

for which a person must serve at least 85% "of any sentence of imprisonment imposed . . . prior to becoming eligible for consideration for parole," H.B. No. 1047, 55th Leg., 1st Reg. Sess. (Okla. 2015); *see* Pet. at 29. This amendment took effect on November 1, 2015. *See* Okla. Stat. tit. 21, § 13.1(16).

Petitioner filed his first application for postconviction relief in the trial court on October 19, 2015, almost four years after he was sentenced on the underlying convictions. *See* Pet. at 2-3; *State v. Bridenstine*, No. CF-2011-208 (Texas Cty. Dist. Ct.) (docket entries of Oct. 19, 2015). On December 9, 2015, the state trial court issued an order denying all of Petitioner's claims. *State v. Bridenstine*, No. CF-2011-208, slip op. at 1-2 (Texas Cty. Dist. Ct. Dec. 9, 2015). The Oklahoma Court of Criminal Appeals ("OCCA") affirmed that decision on April 8, 2016. *Bridenstine v. State*, slip op. at 1-5, No. PC-2015-1131 (Okla. Crim. App. Apr. 8, 2016) [hereinafter OCCA Opinion]; *see* Pet. at 3-14.

Petitioner filed his habeas petition in federal district court on May 11, 2016. Pet. at 1, 17; *see Hailey v. Ray*, 312 F. App'x 113, 115 (10th Cir. 2009). Liberally and reasonably construed, Petitioner asserts that he is entitled to federal habeas relief because: (1) Respondent is retroactively "forcing Petitioner to serve 85% of his sentence" for aggravated possession of child pornography before he is eligible to be considered for parole, in violation of the Ex Post Facto Clause and the Due Process Clause; (2) Petitioner's convictions violate the Double Jeopardy Clause; (3) an expired state statute of limitations barred Petitioner's prosecution for knowingly downloading child pornography; (4) Petitioner's guilty pleas were involuntary because he was "not fully advised" about "all of the consequences" of being a convicted sex offender; and (5) Petitioner's trial attorney was

ineffective because he "never objected" to an erroneous notation on the "Plea of Guilty/Summary of Facts" form showing that Petitioner's "crimes are 85% crimes" or "to the district court's requirement [that Petitioner] serve 85%" of his prison sentence before he can be considered for parole. *See* Pet. at 4-5, 6-7, 8-9, 9-10, 12-13. Petitioner asks the Court to "remove" the so-called "85% enhancement" from his term of imprisonment and "vacate" his conviction for knowingly downloading child pornography "due to the State's violation of [the] statute of limitations."[4] *Id.* at 16.

## ANALYSIS

The Court is required to review habeas petitions and to dismiss a petition without ordering a responsive pleading "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Section 2254 R. 4; *see also Mayle v. Felix*, 545 U.S. 644, 655-56 (2005); *Boutwell v. Keating*, 399 F.3d 1203, 1210-11, 1210 n.2 (10th Cir. 2005). Rule 4 "require[s] dismissing a habeas petition that fails to allege facts that state a [federal] constitutional violation." *Boutwell*, 399 F.3d at 1211. Rule 4 also allows a district court to sua sponte dismiss a habeas petition if its untimeliness is "clear from the face of the petition itself." *Kilgore v. Att'y Gen. of Colo.*, 519 F.3d 1084, 1089 (10th Cir. 2008); *accord Day v. McDonough*, 547 U.S. 198, 209

---

[4] Petitioner also asks that the "remaining suspended counts 3-7 . . . be vacated, due to the statute of limitations." Pet. at 16. This request is moot because the state trial court granted the prosecution's motion to dismiss counts 3 through 8 after Petitioner pled guilty to Counts 1 and 2. *See State v. Bridenstine*, No. CF-2011-208 (Texas Cty. Dist. Ct.) (docket entries of Dec. 13, 2011, and Jan. 9, 2012); *Stratmoen v. Ward*, 248 F. App'x 17, 20 (10th Cir. 2007) ("The state courts granted [petitioner] all the relief to which he was entitled for a number of [habeas] claims, thereby rendering them moot.").

(2006) ("[D]istrict courts are permitted . . . to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition.").

The undersigned notes that Petitioner's habeas petition, which was filed using a preprinted § 2254 form, "seems to be a hybrid," *Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000), as the pleading presents four grounds challenging the *validity* of Petitioner's convictions and sentences under 28 U.S.C. § 2254(a), and one ground challenging the *execution* of Petitioner's sentence for aggravated possession of child pornography under 28 U.S.C. § 2241(c)(3). *See* Pet. at 6-13, 15-16 (challenging the State's authority to prosecute Petitioner, the involuntary nature of his guilty pleas, and his trial attorney's deficient performance), 4-5, 24-28 (alleging that Respondent is "forcing Petitioner to serve 85% of his sentence" before he is eligible for parole consideration). Nonetheless, this Court has authority to summarily dismiss any habeas claim in this Petition if it plainly appears that Petitioner is not entitled to relief on that claim. *See Boutwell*, 399 F.3d at 1210-11, 1210 n.2 (citing Section 2254 R. 1(b), 4); 28 U.S.C. § 2241(d) (establishing concurrent jurisdiction); Section 2254 R. 1(a)(1).

Petitioner raises five grounds for federal habeas relief. *See* Pet. at 4-5, 6-7, 8-9, 9-10, 12-13. Four of these grounds—i.e., the claims in Grounds Two, Three, Four, and Five challenging Petitioner's convictions under the Double Jeopardy Clause, the State's authority to charge Petitioner after the state's three-year statute of limitations supposedly expired, the involuntary nature of Petitioner's guilty pleas, and trial counsel's allegedly deficient performance—are cognizable under 28 U.S.C. § 2254(a), because they assert federal constitutional "errors in the state judgment forming the basis for [Petitioner's]

incarceration." *Jackson v. Ray*, 292 F. App'x 737, 740 (10th Cir. 2008); *see* Pet. at 6-7 (Ground Two), 8-9 (Ground Three), 9-10 (Ground Four), 12-13 (Ground Five). These claims are untimely, as outlined below.

Petitioner's Ground One—in which he asserts that Respondent is retroactively "forcing Petitioner to serve 85% of his sentence" for aggravated possession of child pornography before he is eligible to be considered for parole, in violation of the Due Process Clause and the Ex Post Facto Clause—is cognizable under 28 U.S.C. § 2241(c)(3). *See Boutwell*, 399 F.3d at 1210-16; *Powell v. Ray*, 301 F.3d 1200, 1201, 1203 (10th Cir. 2002); Pet. at 4-5 (Ground One). As further outlined below, the claims asserted in Ground One may be considered on the merits but should be dismissed for failure to state a federal constitutional violation.

A. *Grounds Two, Three, Four, and Five*

1. The Applicable Limitation Period

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth a "one-year limitation period [that] applies to all habeas petitions filed by persons in 'custody pursuant to the judgment of a State court.'" *Dulworth v. Evans*, 442 F.3d 1265, 1268 (10th Cir. 2006) (quoting 28 U.S.C. § 2244(d)(1)).[5] The one-year limitation period runs from the latest of—

---

[5] Petitioner asserts that "28 U.S.C § 2244 cannot apply" at all in this case because he is challenging the State's "jurisdiction to prosecute" him and "[h]is sentence is not final until it is in compliance with the U.S. Constitution." Pet. at 15-16. Those arguments are meritless. *See Dulworth*, 442 F.3d at 1268 (holding that § 2244(d)(1) applies to all state prisoners' habeas petitions, whether filed under § 2241 or § 2254); *Shubert v. Lightle*, No. 16-cv-0089-CVE-TLW, 2016 WL 5394746, at *3 (N.D. Okla. Sept. 27, 2016) (rejecting

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

2.  <u>Application of Limitation Period to Petitioner's § 2254 Claims</u>

Grounds Two, Three, Four, and Five each present claims challenging the validity of Petitioner's convictions under § 2254(a). Pet. at 6-7, 9-10, 12-13. Subsection 2244(d)(1)(A) generally controls a state prisoner's time to file a federal habeas petition challenging the validity of his conviction or sentence under § 2254, unless the petitioner alleges facts related to certain habeas claims that implicate subsections 2244(d)(1)(B), (C), or (D). *Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005) (noting that § 2244(d)(1) "provides one means of calculating the limitation with regard to the 'application' as a whole . . . but three others that require claim-by-claim consideration"). Thus, § 2244(d)(1)(A) controls Petitioner's

---

state prisoner's argument that the judgment of his conviction was not "final" under § 2244(d)(1)(A) until his sentence complied with the Constitution).

time to file his habeas petition unless he alleges facts related to specific claims that implicate § 2244(d)(1)(B), (C), or (D).

### a. Subsection 2244(d)(1)(A)

Courts look to the relevant state's law to determine when a criminal judgment becomes "final" as that term is used in § 2244(d)(1)(A). *See, e.g.*, *Jones v. Patton*, 619 F. App'x 676, 678-79 (10th Cir. 2015) (citing *Clayton v. Jones*, 700 F.3d 435, 441 (10th Cir. 2012); *see also Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001)). In Oklahoma, a defendant who pleads guilty cannot directly appeal his conviction or sentence to the OCCA unless he "file[s] an application in the trial court to withdraw his plea within ten days of the judgment and sentence." *Clayton*, 700 F.3d at 441 (citing Okla. Stat. tit. 22, § 1051; OCCA R. 4.2(A)). "If a defendant does not timely move to withdraw a guilty plea or file a direct appeal," then the judgment of his "convictions become[s] final ten days after sentencing." *Jones*, 619 F. App'x at 678 (citing Okla. Stat. tit. 22, § 1051; OCCA R. 4.2; *Clayton*, 700 F.3d at 441; *Clark v. Oklahoma*, 468 F.3d 711, 713 (10th Cir. 2006)).

Petitioner was sentenced on December 13, 2011, and he "did not move to withdraw his pleas or otherwise attempt to appeal his convictions in this matter." OCCA Op. at 1; *accord* Pet. at 2, 4. 8. 12. Thus, the judgment of Petitioner's convictions became final ten days later, on December 23, 2011. Assuming the one-year limitation period in § 2244(d)(1)(A) began to run the next day, Petitioner had until December 24, 2012, to timely file a federal habeas petition. *See* Fed. R. Civ. P. 6(a); *Harris v. Dinwiddie*, 642 F.3d 902, 906 n.6 (10th Cir. 2011) (citing *United States v. Hurst*, 322 F.3d 1256, 1260-61 (10th Cir. 2003)). As noted, the instant Petition was not filed until May 11, 2016.

### b. Subsections 2244(d)(1)(B), (C), and (D)

None of the allegations of Grounds Two through Five implicate subsections 2244(d)(1)(B) or (C).  Petitioner does allege specific facts as to Ground Five that merit discussion of the potential applicability of § 2244(d)(1)(D).  *See* Pet. at 4-5, 16.

In Ground Five, Petitioner argues that his trial attorney was ineffective because the "Plea of Guilty/Summary of Facts shows" that Petitioner's offense "is an 85% crime," and his attorney has "never objected to the district court's requirement to serve 85%," even though neither of Petitioner's offenses was "85% crimes" when he committed it (and his attorney later admitted this fact). Pet. at 13; *see also id.* at 12, 32.  Petitioner asserts that he discovered this "discrepancy" only after "a law clerk at Jess Dunn Correctional Center" told Petitioner that a proposed amendment to part of Oklahoma's "85% Law," Okla. Stat. tit. 21, § 13.1, would make aggravated possession of child pornography an "85% crime" beginning November 1, 2015.  *See* Pet. at 13, 16 (citing H.B. No. 1047, 55th Leg., 1st Reg. Sess. (Okla. 2015), codified at Okla. Stat. tit. 21, § 13.1(16) (eff. Nov. 1, 2015)); *see also* Pet. at 18-21.  Petitioner argues that his one-year limitation period to challenge his trial attorney's error "should begin on" March 30, 2015, which is the date Petitioner asked prison officials to "investigate this issue and remove the 85% enhancement" from his term of imprisonment.  Pet. at 16, 22.

Petitioner asserts that House Bill 1047 provides the factual predicate for the ineffective-assistance-of-counsel claim in Ground Five and that his one-year window to bring this claim to federal court "should begin on the date" he asked prison officials to "remove" the "85% enhancement" from his sentence in light of this "new" information.

10

*See* Pet. at 12-13, 16, 22.  But the limitations period in § 2244(d)(1)(D) starts "when the petitioner knows of the facts giving rise to the habeas claim; it is not required that he or she understand the legal significance of those facts."  *Klein*, 437 F. App'x at 684.  As affirmatively alleged by Petitioner, his "Plea of Guilty/Summary of Facts" form, which was filed in the trial court on December 13, 2011, "shows" on its face that his offense of conviction was designated "an 85% crime."  Pet. at 13; *see* Plea of Guilty/Summary of Facts at 2, *State v. Bridenstine*, No. CF-2011-208 (Texas Cty. Dist. Ct. Dec. 13, 2011).  Likewise, any failure of Petitioner's trial counsel to object to that designation was evident at that time.

Accordingly, nothing in House Bill 1047 "alerted [Petitioner] to any *factual* basis for his claim," *Preston*, 234 F.3d at 1120—i.e., the facts that an 85% requirement was being imposed and that there had been no challenge raised by his attorney, both of which were known to Petitioner on December 13, 2011.  *See* Pet. at 12-13.  Rather, Petitioner's allegations reflect that House Bill 1047 alerted Petitioner to the *legal significance* of facts about which he had been aware for at least three years.  *See, e.g.*, Pet. at 4, 12-13, 16.  The Court finds that Petitioner knew about the facts giving rise to his ineffective-assistance-of-counsel claim no later than December 13, 2011.  *See* Pet. at 1, 12-13.

However, because the judgment of Petitioner's convictions was not final until December 23, 2011, Petitioner is entitled to rely upon that slightly later start date under 28 U.S.C. § 2244(d)(1).  As noted, the corresponding one-year limitation period expired on December 24, 2012.  Because Petitioner did not file his Petition until more than three years

later, on May 11, 2016, this § 2254 habeas claim—absent tolling or an exception—is clearly untimely under § 2244(d)(1)(D).

### c. Statutory Tolling

"The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under [§ 2244(d)]." 28 U.S.C. § 2244(d)(2). To take advantage of this statutory tolling provision, however, a state prisoner must file the application in state court before his or her one-year limitation period under § 2244(d)(1) expires. *Clark*, 468 F.3d at 714. Petitioner filed his first application for state postconviction relief on October 9, 2015, almost three years after his § 2244(d)(1) deadline expired on December 24, 2012. *See* Pet. at 2. Petitioner's first application for state postconviction relief therefore did not statutorily toll his limitation period under § 2244(d)(1)(A) or (D).

### d. Equitable Tolling

The AEDPA filing deadline may be equitably tolled in "extraordinary circumstances." *Clark*, 468 F.3d at 714 (internal quotation marks omitted). "[E]quitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1231-32 (2014) (citing *Pace*, 544 U.S. at 418). To benefit from equitable tolling, Petitioner must "show both extraordinary circumstances preventing timeliness and diligent pursuit of his claim[s]." *Clark*, 468 F.3d at 714. Circumstances appropriate for equitable tolling include "when an

adversary's conduct—or other uncontrollable circumstances—prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period." *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000).

Petitioner does not specifically ask the Court to equitably toll the statute of limitations as to any of his time-barred § 2254 claims. Pet. at 15-16. Instead, Petitioner notes that he "attempted to" diligently pursue his ineffective-assistance-of-counsel claim (Ground Five) "immediately" after the prison "law clerk" discovered House Bill 1047 sometime around March 30, 2015. *See* Pet. at 13, 14, 15-16. But, as explained above, Petitioner knew about the *facts* giving rise to that claim by the time he was sentenced on December 13, 2011. The allegation that Petitioner did not fully understand the legal significance of those facts until after his AEDPA filing deadline expired on December 24, 2012, is not a "rare and exceptional circumstance[]" warranting equitable tolling. *York v. Galetka*, 314 F.3d 522, 527 (10th Cir. 2003); *see, e.g.*, *Yang v. Archuleta*, 525 F.3d 925, 930 (10th Cir. 2008) (concluding that petitioner's pro se status and unfamiliarity with the law and legal process were not extraordinary circumstances). Moreover, Petitioner does not indicate that he did anything to uncover the alleged legal error, such as reviewing Oklahoma's parole statutes, in the year before his AEDPA deadline expired. *Cf. Yang*, 525 F.3d at 930 ("[A] petitioner's language deficiency must be coupled with proof of independent and diligent effort to overcome the prisoner's disabilities by alternative means.").

The lack of "extraordinary circumstances preventing timeliness" and Petitioner's lack of "diligent pursuit" of his § 2254 claims are clear on the face of the Petition. *Clark*, 468 F.3d at 714; *see* Pet. at 2, 6-8, 10-16. Accordingly, Petitioner has not demonstrated that equitable tolling should apply in his case. *See Brown v. Poppel*, 98 F. App'x 785, 788 (10th Cir. 2004).

### e. Actual Innocence Exception

"[A] credible showing of actual innocence" based on newly discovered evidence "may allow a prisoner to pursue his constitutional claims" as to his conviction, under an exception to procedural and limitations-based bars—including § 2244(d)(1)—established for the purpose of preventing a fundamental miscarriage of justice. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928, 1931-32 (2013). Successful actual innocence claims are rare due to the demanding evidentiary requirements for such claims. *See id.* at 1928, 1931, 1936; *House v. Bell*, 547 U.S. 518, 538 (2006). "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 536-37 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)); *accord McQuiggin*, 133 S. Ct. at 1935 (applying the same standard to petitions asserting actual innocence as a gateway to raise habeas claims that are time-barred under § 2244(d)(1)). Such claims generally must challenge the underlying offense of conviction (as opposed to the resulting sentence) and must be based on "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *see also Laurson v. Leyba* 507 F.3d 1230, 1233 (10th Cir. 2007) ("'[A] person cannot be actually innocent

14

of a noncapital sentence.'" (quoting *Reid v. Oklahoma*, 101 F.3d 628, 630 (10th Cir. 1996))).

Petitioner does not allege that he has newly discovered evidence of factual innocence of his pornography offense sufficient to permit federal review of his time-barred § 2254 claims. *McQuiggin*, 133 S. Ct. at 1936. Instead, and at most, Petitioner asserts that House Bill 1047 is "new evidence" that Petitioner is serving an "illegal *sentence* thereby causing a severe miscarriage of justice and irreparable harm." Pet. at 16 (emphasis added). But it is well settled in this circuit that challenges to noncapital sentencing errors do "not fall within the potential scope of the miscarriage of justice exception" because "a person cannot be actually innocent of a noncapital sentence." *Reid*, 101 F.3d at 630 (alteration omitted) (rejecting application of the miscarriage-of-justice exception based upon a challenge to a sentence enhancement where petitioner did not assert that he was innocent of the felonies to which he had pled guilty); *accord Dretke v. Haley*, 541 U.S. 386, 392 (2004) (declining to resolve the "growing divergence of opinion in the Courts of Appeals regarding the availability and scope of the actual innocence exception in the noncapital sentencing context"). Thus, Petitioner's allegations cannot invoke the actual innocence equitable exception and therefore do not permit consideration by this Court of the § 2254 claims in Grounds Two, Three, Four, and Five. *See McQuiggin*, 133 S. Ct. at 1928; *Bousley*, 523 U.S. at 623.

3. <u>Conclusion</u>

Petitioner's statute of limitations to file a habeas petition under § 2254 expired on December 24, 2012, and he is not entitled to statutory or equitable tolling or to an exception

based upon actual innocence.  Therefore, the § 2254 claims asserted in Petitioner's Grounds Two, Three, Four, and Five are untimely under AEDPA and controlling precedent, and should be dismissed.

### B. *Merits of Petitioner's Ground One Due Process and Ex Post Facto Claims*

As noted, Petitioner in Ground One asserts two habeas claims, properly evaluated under § 2241(c)(3), challenging Respondent's retroactive application of the 85% Law to Petitioner's term of imprisonment for aggravated possession of child pornography.  *See* Pet. at 4-5.  Petitioner asserts that Respondent's alleged error violates the Due Process Clause and the Ex Post Facto Clause because it postpones the date on which Petitioner is initially eligible to be considered for parole under state law.  *See id.* at 4-5, 22-23.  The Court may summarily dismiss these claims if the specific facts alleged in the Petition and attached exhibits, accepted as true, fail to state a federal constitutional violation.  *See* Section 2254 R. 1(b), 4; *Boutwell*, 399 F.3d at 1210-11, 1210 n.2; *Griffith v. Bryant*, 625 App'x 914, 917-18 (10th Cir. 2015).

#### 1. Due Process Challenge

"The Due Process Clause applies when government action deprives a person of liberty or property," *Malek v. Haun*, 26 F.3d 1013, 1015 (10th Cir. 1994) (internal quotation marks omitted), without affording the person whatever "procedural protections the Constitution requires in [his or her] particular case," *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  Petitioner does not argue that he has a protected property interest in being considered for parole.  Accordingly, the Court focuses only on Petitioner's claimed liberty interest.

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence" imposed by a state court. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Thus, the Court "must find any existing liberty interest in the state statutes governing Oklahoma parole." *Hunter v. Beck*, 244 F. App'x 848, 851 (10th Cir. 2007).

The Tenth Circuit has repeatedly held that Oklahoma law does not create a protected liberty interest in parole itself because the decision to grant early release is discretionary and state law "only requires that the Parole Board impartially study parole applications" and make an advisory recommendation to the Governor. *See id*. at 851-52 ("'That the state holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained' and mere hope for liberty 'is not protected by due process.'" (quoting *Greenholtz*, 442 U.S. at 11)); *see, e.g.*, *Griffith*, 625 F. App'x at 917-18; *Boutwell*, 399 F.3d at 1213-15; *Shirley v. Chestnut*, 603 F.2d 805, 807 (10th Cir. 1979). Petitioner does not argue otherwise. Instead, Petitioner suggests that Oklahoma law creates a protected liberty interest in becoming eligible to be considered for parole at the earliest date permitted under state law. *See* Pet. at 4-5, 22-28.

This argument fails for two reasons. First, even if Respondent is "improperly" applying Oklahoma's 85% Law to Petitioner's term of imprisonment, that error does not extend the duration of Petitioner's incarceration beyond the term of years imposed by the

state district court. It merely postpones the date on which Petitioner is initially eligible to be considered for parole. *Compare* Okla. Stat. tit. 21, § 12.1 ("A person committing a felony offense listed in [section 13.1] on or after March 1, 2000, and convicted of the offense" "shall not be eligible for parole consideration prior to serving eighty-five percent (85%) of the sentence imposed"), *with* Okla. Stat. tit. 57, § 332.7(B) (2004) ("For a crime committed on or after July 1, 1998, any person in the custody of the Department of Corrections shall be eligible for consideration for parole who has completed serving one-third (⅓) of the sentence"). The fact that an Oklahoma prisoner is eligible to "be *considered* for parole" after he or she "complete[s] a certain fraction of the sentence" "does not mean that a prisoner is going to be *placed* on parole." *Kelly v. Okla. Pardon & Parole Bd.*, 637 P.2d 858, 858 (Okla. Crim. App. 1981) (emphasis added). That decision depends on an advisory recommendation from the Pardon and Parole Board, Okla. Stat. tit. 57, § 332.2(A) (2013), and "[t]he Board's only statutory guidance in the exercise of its discretion is that it act as the public interest requires," *Shirley*, 603 F.2d at 807 (citing Okla. Stat. tit. 57, § 354 (1971)); *accord* Okla. Stat. tit. 57, § 354 (2013).

Second, even assuming Oklahoma law gives Petitioner a legitimate expectation in being considered for parole "at the earliest such date" after he serves some portion of his prison sentence, Okla. Stat. tit. 57, § 332.7(D), "'an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause,'" *Hunter*, 244 F. App'x at 852 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983)). The measure of "process" guaranteed by the Due Process Clause "is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a

18

legitimate claim of entitlement." *Olim*, 461 U.S. at 250. It is not "the right to demand needless formality," *id.* (internal quotation marks omitted), where "there are no constitutionally-protected interests in the process at issue," *Koch v. Daniels*, 296 F. App'x 621, 628 (10th Cir. 2008).

As noted, an Oklahoma prisoner has no "legitimate claim of entitlement," *Olim*, 461 U.S. at 250, to parole because the Pardon and Parole Board has broad discretion in deciding whether to recommend that the Governor grant early release. *See Boutwell*, 399 F.3d at 1213-15; *Shirley*, 603 F.2d at 807. Without a liberty interest in parole itself, Petitioner cannot show he is entitled to relief based upon Respondent's application of a state law that "improperly postpone[s] his opportunity for parole" consideration violates the Due Process Clause. *Griffith*, 625 F. App'x at 917 ("Whether the [85% Law] should be applied under these circumstances is a question of state law."); *see also Koch*, 296 F. App'x at 627-28 ("If Koch has no constitutionally-protected liberty interest in parole or preparole, he can have no interest in how often he is considered for them, or even whether he is considered for them at all."). Accordingly, Petitioner's due process challenge must fail.

2. Ex Post Facto Challenge

Finally, Petitioner argues that Respondent is retroactively "forcing Petitioner to serve 85% of his sentence" for aggravated possession of child pornography before he is eligible to be considered for parole, in violation of the Ex Post Facto Clause, because that offense was not an "85% crime" when he committed it and did not become an "85% crime" until November 2015. Pet. at 4-5.

"The Ex Post Facto Clause prohibits states from passing laws that retroactively alter the definition of crimes or increase the punishment for criminal acts."  *Boutwell*, 399 F.3d at 1215 (citing U.S. Const. art. I, § 10).  The Tenth Circuit has summarized the Ex Post Facto Clause's "application in the context of retroactive changes to laws governing parole," *Powell*, 301 F.3d at 1203, as follows:

> Two critical elements must be present for a law to fall within the ex post facto prohibition: "first, the law must be retrospective, that is, it must apply to events occurring before its enactment; and second, it must disadvantage the offender affected by it." *Miller v. Florida*, 482 U.S. 423, 430 (1987) (internal quotations and citations omitted).
>
> The Supreme Court has rejected the argument "that the Ex Post Facto Clause forbids any legislative change that has any conceivable risk of affecting a prisoner's punishment." [*Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 508 (1995)].  The Ex Post Facto Clause was never intended to result in judicial "micromanagement of an endless array of legislative adjustments to parole and sentencing procedures . . . ." *Id.* Instead, the Court has consistently held that "the question of what legislative adjustments will be held to be of sufficient moment to transgress the constitutional prohibition *must* be a matter of degree." *Id.* at 509.  "Retroactive changes in laws governing parole of prisoners, in some instances, may be violative" of the prohibition against ex post facto laws, *Garner v. Jones*, 529 U.S. 244, 250 (2000), but the controlling inquiry is not whether the law is retroactive, but "whether it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Morales*, 514 U.S. at 509 (footnote omitted).  When the amendment creates only "the most speculative and attenuated possibility" of increasing the measure of punishment, it is "insufficient under any threshold" to violate the Ex Post Facto Clause. *Morales*, 514 U.S. at 509.

*Henderson v. Scott*, 260 F.3d 1213, 1215-16 (10th Cir. 2001) (omission in original) (citations omitted).  There is no set "formula for identifying whether a specific law" violates the Ex Post Facto Clause.  *Id.* at 1216.

Petitioner alleges that Respondent's application of the so-called "85% enhancement" to his term of imprisonment for aggravated possession of child pornography violates the Ex Post Facto Clause because it retroactively postpones his initial eligibility for parole consideration. *See* Pet. at 4-5, 18-19, 22-28. This change in timing "is a critical factor for purposes of determining whether [Petitioner] has a valid ex post facto claim." *Powell*, 301 F.3d at 1203 (citing *Morales*, 514 U.S. at 511). Nonetheless, assuming the truth of Petitioner's allegations, Petitioner still must show that retroactively postponing his first opportunity to be considered for parole "create[s] more than a speculative risk," *id.*, that he will serve "a longer period of incarceration than under the earlier rule," *Garner*, 529 U.S. at 255.

Petitioner does not allege any particular facts that meet this burden. *See* Pet. at 4-5, 15-16, 22-28. Applying the 85% Law does not extend the duration of Petitioner's incarceration beyond the term of years imposed by the state district court—it merely postpones the date on which Petitioner is eligible to be considered for parole. *See Griffith*, 625 F. App'x at 917; *cf. Seegars v. Ward*, 124 F. App'x 637, 639 (10th Cir. 2005) ("[The statutory amendments] focus exclusively on the calculation of parole eligibility dates and thus could not have . . . increased punishment for a crime. Absent such a showing, the statute does not violate the Ex Post Facto Clause . . . ." (citing Okla. Stat. tit. 57, § 332.7(B)(2), (F)). The Pardon and Parole Board retains broad authority to make an advisory recommendation "to the Governor as, in its discretion, the public interest requires," Okla. Stat. tit. 57, § 354, regardless of when Petitioner becomes eligible for parole consideration. *Cf. Powell*, 301 F.3d at 1204 ("Mr. Powell has failed to demonstrate

21

that there were any significant differences between the discretionary criteria governing the two forms of release as applied to his particular circumstances."). Any assertion that Respondent's alleged error in postponing Petitioner's initial eligibility date "has increased the term of [his] incarceration" or "has had the effect of prolonging his punishment" "is therefore pure speculation." *Id.* Accordingly, Petitioner's ex post facto challenge must fail.

### 3. Conclusion

Petitioner's Ground One claims should be dismissed without prejudice because the specific facts alleged in the petition, accepted as true, fail to state any federal constitutional violation. Section 2254 R. 4; *Boutwell*, 399 F.3d at 1211; *Koch*, 296 F. App'x at 628; 28 U.S.C. § 2241(c)(3).

## RECOMMENDATION

For the foregoing reasons, it is recommended that the Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. No. 1) be dismissed as follows. Ground One should be dismissed without prejudice for failure to state a federal constitutional violation as required to permit relief under 28 U.S.C. § 2241(c)(3). The Court should dismiss Grounds Two, Three, Four, and Five as untimely under § 2244(d)(1)(A). *Cf. Troutt v. Jones*, 288 F. App'x 452, 453-54 (10th Cir. 2008) (denying certificate of appealability where district court rejected one habeas claim "on the merits" "for failure to state a cognizable claim for habeas relief" and dismissed the remaining claims as time-barred under § 2244(d)(1)(A)).

**NOTICE OF RIGHT TO OBJECT**

Petitioner is advised of his right to file an objection to the Report and Recommendation with the Clerk of this Court by October 6, 2017, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Petitioner is further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case. The Clerk of Court is directed to serve copies of the Petition and this Report and Recommendation on Respondent and on the Attorney General of the State of Oklahoma through electronic mail sent to fhc.docket@oag.state.ok.us.

ENTERED this 15th day of September, 2017.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE